UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FLOYD WHITFIELD,

     Plaintiff,

v.                         Case No.:  3:20-cv-63-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Floyd Whitfield seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for underpayment of benefits received for his auxiliary beneficiaries (his children) and for further consideration of his primary insurance amount ("PIA"), including the family maximum benefit amount. The Commissioner filed the Transcript and Supplemental Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.     Social Security Act Standard of Review, Procedural History, and the ALJs' Decisions

### A.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the administrative law judge ("ALJ"), but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that

the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

### B.    Procedural History and the ALJs' Decisions

The procedural history is central to the issues raised here. It begins on September 25, 1985, the date Plaintiff was hurt on the job. (Tr. 28). Plaintiff applied for disability insurance benefits on May 15, 1986, alleging an onset date of November 11, 1985. (Tr. 121). On an April 16, 2007 reconsideration, the Social Security Administration ("SSA") found Plaintiff disabled and entitled to receive disability insurance benefits from the onset date of November 11, 1985, based on Plaintiff meeting Listing 12.05B (Mental Retardation). (Tr. 9, 121). In addition, after applying for workers' compensation through that State of Washington, Plaintiff also started receiving workers' compensation benefits in 1987. (Tr. 32).

As an initial matter, Plaintiff does not claim that his benefit amount was incorrectly calculated. (Tr. 40). Rather, he claims that his auxiliary beneficiaries' (his children's) benefits were incorrectly calculated. (Tr. 40-41). To attempt to remedy this alleged incorrect calculation, Plaintiff and his wife, Mary L. Whitfield, filed several notices with SSA. (Tr. 1258).

*ALJ Anderson*

Eventually, Plaintiff received a hearing before ALJ JoAnn L. Anderson on March 6, 2008. (Tr. 78-102). At the outset of the hearing. ALJ Anderson informed

Plaintiff that she wanted to postpone the hearing because when she reviewed the file, it had "not been put together and developed completely." (Tr. 81). ALJ Anderson also stated that the analysis of the file "in [her] opinion [was not] sufficient for [her] to hold a full and fair hearing and know what [she] need[s] to ask [Plaintiff] and what [she] need[s] to cover with [him]." (Tr. 82). The ALJ then informed Plaintiff that after her office completed the file and she had a chance to review it, she would schedule a second hearing. (Tr. 97). But rather than hold a second hearing, ALJ Anderson entered a decision on September 8, 2008. (Tr. 1258-63). Plaintiff appealed this decision and eventually filed a civil action in the Middle District of Florida. *See Whitfield v. Astrue*, 3:09-cv-537-MCR. On February 16, 2010, Magistrate Judge Monte C. Richardson granted an agreed Motion for Entry of Judgment with Remand "to allow the administrative law judge (the 'ALJ') to clarify the issues and provide Plaintiff with the opportunity to have a hearing on the issues." (Tr. 76).

Upon receipt of Judge Richardson's Order, the Appeals Council entered an Order remanding the case to an administrative law judge. (Tr. 71-73). The Appeals Council directed the ALJ to offer Plaintiff the opportunity for a hearing and to take any further action needed to complete the administrative record and issue a new decision. (Tr. 73).

*ALJ Carstetter*

On remand, the file was assigned to ALJ David W. Carstetter. (Tr. 121-29). ALJ Carstetter considered the following issue: whether SSA properly applied and calculated an offset for workers' compensation benefits against Plaintiff's auxiliary beneficiaries' benefits. (Tr. 122). ALJ Carstetter found Plaintiff was entitled to disability. (Tr. 128). ALJ Carstetter further found Plaintiff continued to be disabled. (Tr. 128).

Of note, ALJ Carstetter remanded the matter to the payment center for further evaluation of the workers' compensation offset issue as follows:

> 3. The payment center is directed to print out and incorporate into the claimant's record the 14 sheets of microfilm contained in the DIWC file of Mary Whitfield [ ]-2506 as exhibit 23. The payment center is further directed to evaluate the microfiche printouts, to determine if the claimant received payments which are not workers' compensation benefits that were incorrectly included in the workers' compensation offset calculations and to determine the types of benefits that the claimant received.

> 4. The payment center is directed to re-contact the State of Washington, Department of Labor and Industries with SSA Form 1709 or, its successor and verify the types and dates of benefits that the claimant receives, as well as obtain the reverse offset history. The payment center is then directed to properly remove the Agency offset, recalculate the claimant and his auxiliary beneficiary's (including his children's) benefits paying careful attention to DI 52120.265 and to provide a detailed explanation to the claimant of the results of this recalculation.

(Tr. 128).

After ALJ Carstetter's remand to the payment center, SSA sent Plaintiff a letter dated August 15, 2011, informing him that it had received ALJ Carstetter's decision and were advised to review the offset of his disability benefits based on his receipt of workers' compensation benefits. (Tr. 196). SSA informed Plaintiff that after a thorough investigation of his workers' compensation payments, it determined that Plaintiff's and his family's benefits were offset correctly from May 1986 (the first month he and his family were eligible for benefits) through August 1986, and he and his family began receiving full social security benefits effective September 1986. (Tr. 196). "Therefore, there are no additional benefits due you and your family." (Tr. 196).

On July 5, 2017, Plaintiff received a second letter from SSA stating that it had reviewed his records and he was not entitled to any additional back payments. (Tr. 198). SSA found "upon reconsideration, the initial determination (ALJ Carstetter's November 10, 19, 2010 decision) is affirmed. The initial determination is correct and proper and·in accordance with the pertinent provisions of the law and regulations." (Tr. 198).

On August 4, 2017, Plaintiff filed a request for hearing, asserting his benefits needed to be recalculated. (Tr. 107).

*ALJ Thompson*

On August 30, 2018, ALJ John D. Thompson Jr. held a hearing with Plaintiff and his wife present. (Tr. 22-55). ALJ Thompson issued a decision on May 23, 2019, which is now before the Court. ALJ Thompson summarized the history of the case beginning with the remand from this Court and ALJ Carstetter's decision. (Tr. 8).

ALJ Thompson found that in compliance with ALJ Carstetter's decision, an August 15, 2011 initial notice was sent to Plaintiff advising him that his benefits were calculated and offset correctly effective May 1986 through August 1986, and Plaintiff and his family received full benefits effective September 1986. (Tr. 8). ALJ Thompson also referred to the reconsideration notice issued on July 5, 2017, affirming ALJ Carstetter's initial determination and again finding no additional back payments due. (Tr. 8).

ALJ Thompson framed the issue as whether during the period of entitlement to disability insurance benefits, Plaintiff received workers' compensation or public disability benefits that would result in a reduction of disability benefits. (Tr. 9). More specifically, he framed the issue as: "the claimant has alleged improper calculation of the amount of disability benefits paid to himself and his beneficiaries, including failure to pay benefits to additional children born after his established disability onset date and an improper offset of workers' compensation benefits." (Tr. 9).

In the decision, ALJ Thompson found Plaintiff became entitled to receive disability insurance benefits on the established onset date of November 11, 1985, based on meeting the requirements of Listing 12.05B. (Tr. 9). During the period of entitlement, ALJ Thompson found Plaintiff also received workers' compensation benefits. (Tr. 10). Because Plaintiff also received workers' compensation benefits, ALJ Thompson found an offset of benefits was necessary under 20 C.F.R. § 404.408. (Tr. 10). ALJ Thompson found Plaintiff applied for Workers' Compensation benefits in the state of Washington on May 27, 1986. He then included a table showing temporary total workers' compensation disability benefits from September 26, 1985 to October 13, 1985; October 17, 1985 to June 30, 1986; and July 1, 1986 to June 30, 1987. The chart showed an unknown type of workers' compensation disability benefits from July 1, 1987 to December 15, 1992, and permanent total workers' compensation disability benefits from December 16, 1992 to present. (Tr. 10).

ALJ Thompson cited and explained Section 224 of the Social Security Act (42 U.S.C. § 424a) regarding the requirements for an individual who receives disability insurance benefits and also receives auxiliary benefits payable on the same record. (Tr. 10). He found Plaintiff and his auxiliary beneficiaries should not have and did not receive any disability insurance benefit payments from the onset date of November 11, 1985, through the end of the required five-month waiting period for disability insurance benefits, which ended in April 1986. (Tr. 10-11); *see also* 20

C.F.R. § 404.315(a). ALJ Thompson also found from May 1986 through August 1986, Plaintiff and his auxiliary beneficiaries were not paid any disability benefits as the entire monthly benefits amount was offset by worker's compensation benefits in accordance with Section 224 of the Social Security Act. (Tr. 11). He cited instances in the record that confirmed this statement. (Tr. 11 (citing Tr. 106, 1245-51)).

Beginning in September 1986, the State of Washington applied a reverse offset[1] to Plaintiff's workers' compensation benefits and, based on this reverse offset, the Agency paid the full disability insurance amount to Plaintiff and his auxiliary beneficiaries. (Tr. 11) The ALJ incorporated eight charts showing the benefit amounts and payments to Plaintiff and to each auxiliary beneficiary. (Tr. 12-16).

In summary, the ALJ found that Plaintiff did not allege that his benefits were incorrectly calculated and paid, but claimed that his children's (auxiliary beneficiaries') benefits were incorrectly calculated and paid from 1992 to 2001, at which time they started to receive payments on Plaintiff's wife, Mary Whitfield's record. (Tr. 16). The charts established that the Agency did not offset the benefits

---

[1] Some states have plans that reduce a claimant's workers' compensation benefits when the individual is also receiving Social Security disability benefits. POMS DI 52105.001. "This is known as reverse offset or reverse jurisdiction (RJ). If SSA recognizes the reverse offset or RJ plan, the DIB benefits are not offset." *Id.*

payments to the auxiliary beneficiaries at any time from 1992 to 2001, and in fact did not offset any benefits after August 1986. (Tr. 16).[2] The ALJ concluded: "that the Agency properly offset the benefits paid to the claimant and his auxiliary beneficiaries from May 1986 through August 1986 and paid the full benefit amount thereafter due to the reverse offset by the State of Washington." (Tr. 16).

ALJ Thompson also found that during the period of entitlement, the primary insurance amount ("PIA") of Plaintiff and his auxiliary beneficiaries was properly calculated and paid, citing 20 C.F.R. § 404.408. He explained Section 202(d) of the Social Security Act, as amended, specifies the amount of monthly benefits payable to a child or children, which must be equal to one half of the disabled worker's benefit amount. (Tr. 16). But Section 203(a) of the Social Security Act limits the amount of benefits that may be paid for any month on any one record. (Tr. 16). In addition, the 1980 amendments set a special limit on the amount of family benefits payable on all disability claims when the month of entitlement is July 1980 or later. (Tr. 16). This special limit is called the "disability maximum family benefit." (Tr. 16-17).

---

[2] Although not at issue, the Commissioner contends that Plaintiff and his auxiliary beneficiaries were actually overpaid. (Doc. 42, p. 8). The Commissioner argues that SSA should have imposed a workers' compensation offset until May 1987, and erroneously began paying Plaintiff his full benefits in September 1986, instead of May 1987, which resulted in an overpayment. (Doc. 42, p. 9). An WC/PDB Offset Datasheet dated February 7, 2013, supports the Commissioner's argument. (Tr. 1245). But the special instruction in the Offset Datasheet establishes that SSA could not impose the offset due to administrative finality. (Tr. 1245).

ALJ Thompson provided the formula used to determine the family maximum payment amount. (Tr. 17). He explained that the amount paid to Plaintiff and his beneficiaries was limited by the disability maximum family benefit and that the Agency pays Plaintiff first out of the maximum benefit amount and then proportionally allocates the remaining benefits. (Tr. 17). By this allocation, the proportional amount will decrease if more children become eligible and increase for the remaining beneficiaries when a child is no longer entitled to benefits by aging out. (Tr. 17).

Noting again that Plaintiff did not allege he was paid incorrectly, the ALJ turned to Plaintiff's allegations that his children (auxiliary beneficiaries) were paid incorrectly from 1992 – 2001, after which they began receiving benefits on Mary Whitfield's record. ALJ Thompson found: "that the record shows that the claimant and his auxiliary beneficiaries were properly paid the family maximum benefits during this period (and during entire period noted in the charts above). As seen in the charts above, the amounts paid were prorated based on the number of children entitled on the claimant's record. Thus, the amounts lessened as children were added and increased when children aged out and were no longer eligible to receive benefits as dependent children/auxiliary beneficiaries." (Tr. 17).[3]

---

[3] At the hearing, Mary Whitfield testified that she had a better earnings record than Floyd Whitfield. (Tr. 43). ALJ Thompson explained that because her earnings record was better, the benefits she and her auxiliary beneficiaries received would also be better. (Tr. 42-43).

Alternatively, the ALJ determined that even if the PIA amount or the maximum benefit amount were incorrect, "administrative finality bars any changes to the computation," citing POMS GN 04030.050. (Tr. 17). Citing the POMS, the ALJ determined that "administrative finality does not permit corrections of error discovered after four years from the initial determination of the PIA." (Tr. 17 (citing POMS GN 04030.050.C.1.)). ALJ Thompson found more than four years had passed since Plaintiff was entitled to benefits and therefore administrative finality would bar recalculation of the PIA and the family maximum benefit, even if it were incorrect. (Tr. 17-18).

Plaintiff requested review of ALJ Thompson's hearing decision, but the Appeals Council denied Plaintiff's request on November 25, 2019. (Tr. 1-4). Plaintiff initiated the instant action by Complaint (Doc. 1) on January 24, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 22).

## II.    Analysis

Relying on ALJ Carstetter's November 2010 decision that the Master Beneficiary Record ("MBR") may contain errors, Plaintiff argues that ALJ Thompson "does not appear to address" the issue of any errors in the MBR, and instead accepts the MBR data as accurate. (Doc. 37, p. 8). Plaintiff also argues that

ALJ Thompson's decision may at first appear to be complete, but it does not explain the benefit calculation that ALJ Carstetter directed in his decision. (Doc. 37, p. 8).

The Commissioner contends that Plaintiff ignores the detailed explanation provided by ALJ Thompson in the May 2019 decision. (Doc. 42, p. 6). The Commissioner also contends that Plaintiff identifies no specific error in ALJ Thompson's detailed explanation regarding the proper amounts owed to Plaintiff and his auxiliary beneficiaries from May 1986 through August 1986 or from 1992 to 2001, and therefore waives this argument. (Doc. 42, p. 7). Even if not waived, the Commissioner argues that Plaintiff's speculation that SSA might have incorrectly applied a workers' compensation offset is meritless as the record clearly shows that Plaintiff was not entitled to benefits during May 1986 through August 1986, and no offset was applied after that time. (Doc. 42, p. 7-8).

Contrary to Plaintiff's argument, ALJ Thompson considered evidence in the record related to Plaintiff's and his auxiliary beneficiaries' benefit amounts. ALJ Thompson clearly determined that Plaintiff and his auxiliary beneficiaries should not have and did not receive any disability insurance payments from the established onset date of November 11, 1985, through the end of the required five-month waiting period for disability benefits, which ended April 1986. (Tr. 10-11). ALJ Thompson then found that from May 1986 through August 1986, Plaintiff and his auxiliary beneficiaries were not paid any benefits as the entire amount of monthly benefits

were offset in accordance with receipt of workers' compensation benefits. (Tr. 11). ALJ Thompson cites an August 11, 2011 SSA 553 Special Determination document that showed a workers' compensation offset was imposed for May 1986 through August 1986, and beginning in September 1986, Washington State imposed a reverse offset. (Tr. 11, 103). Based on the reverse offset, as of September 1986, Plaintiff and his auxiliary beneficiaries were paid disability benefits in full. (Tr. 11, 103). Plaintiff's and his auxiliary beneficiaries' benefits were reviewed and found to be processed correctly. (Tr. 103). ALJ Thompson also cites a document entitled "Remarks," which confirms that Plaintiff's and his auxiliary beneficiaries' benefits were reviewed, including all workers' compensation offsets, and all the benefits were paid correctly. (Tr. 11, 106). ALJ Thompson then cites a February 7, 2013 WC/PBD Offset Datasheet, which lists Plaintiff's earnings, workers' compensation offsets, benefits, and benefits payment amounts. (Tr. 11, 1245-51). ALJ Thompson also included extensive charts showing the dates, monthly benefits amounts, offset amounts, and amounts paid of disability benefits. (Tr. 11-16). ALJ Thompson fully complied with ALJ Carstetter's decision by reviewing the record, considering the review of the benefit amounts by SSA after ALJ Carstetter's decision, and determining that no errors in calculations existed for Plaintiff' or his auxiliary beneficiaries' benefits.

Simply put, ALJ Thompson thoroughly discussed and resolved ALJ Carstetter's concerns. And while Plaintiff speculates that the disability benefits calculations may be in error, Plaintiff does not allege, let alone establish, exactly what these errors may be. Plaintiff merely argues that there could be errors. Without more and with ALJ Thompson's well-reasoned decision, there is no basis to remand this action. Thus, substantial evidence supports ALJ Thompson's decision and the Court finds no error.[4]

## III.    Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

---

[4] Plaintiff also challenges ALJ Thompson's alternate finding that administrative finality bars any changes to the computation. (Doc. 37, p. 8-9; Tr. 17-18). The Court need not reach this issue because it finds the remainder of ALJ Thompson's decision supported by substantial evidence.

**DONE** and **ORDERED** in Fort Myers, Florida on May 12, 2022.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties